**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ETHAN DEECHER and GRADY HABICHT, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>RENSSELAER POLYTECHNIC INSTITUTE,<br><br>      Defendant. | CLASS ACTION COMPLAINT<br><br>Civil Case No. 1:20-cv-498 (TJM/DJS)<br><br>**JURY TRIAL DEMANDED** |

    Plaintiffs, by and through their undersigned attorneys, as and for their class action complaint, allege as follows.

**I. INTRODUCTION**

    1. Plaintiffs bring this action against defendant Rensselaer Polytechnic Institute ("RPI" or "Defendant") to recover tuition and fees paid by students for an on-campus academic experience and related on-campus services which Defendant has failed to deliver as promised.

    2. Upon information and belief, in response to the COVID-19 pandemic, Defendant has moved all class instruction completely online, resulting in Plaintiffs being denied the educational instruction, facilities and services that they bargained and paid for. Defendant, however, continues to charge Plaintiffs tuition and fees for the undelivered services without any refund or adjustment. Defendant's conduct has resulted in injury to Plaintiffs, constitutes a breach of Defendant's contractual duty owed to Plaintiffs, and it would be against equity and good conscience to permit Defendant to retain such tuition and fees.

3. As a result of the above, Plaintiffs and the putative class are entitled to legal and equitable relief, including, but not limited to, monetary damages, disgorgement of sums paid, injunctive relief, and the costs, disbursements, and reasonable attorneys' fees of this action.

## II. JURISDICTION

4. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action involving more than 100 putative class members, some of whom are citizens of states diverse from Defendant, and the amount in controversy exceeds $5,000,000, exclusive of costs and interest.

5. This Court has personal jurisdiction over Defendant because it is organized and incorporated under New York law, maintains its principal place of business in this district, regularly and systematically transacts business in this district, and the wrongful conduct complained of in this complaint occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the complaint occurred in this district, and Defendant is subject to personal jurisdiction in this district.

## III. PARTIES

7. Plaintiff Ethan Deecher is an individual residing in Hampshire County, Commonwealth of Massachusetts.

8. At all relevant times, Mr. Deecher was an undergraduate engineering student enrolled at Rensselaer Polytechnic Institute and was charged tuition and fees by Defendant for the Spring 2020 semester and Summer 2020 Arch semester.

9. Plaintiff Grady Habicht is an individual residing in Tolland County, State of Connecticut.

10.     At all relevant times, Mr. Habicht was an undergraduate engineering student enrolled at Rensselaer Polytechnic Institute and was charged tuition and fees by Defendant for the Spring 2020 semester and Summer 2020 Arch semester.

11.     Defendant Rensselaer Polytechnic Institute is a tax-exempt not-for-profit corporation and private research university incorporated under the laws of the State of New York with a principal place of business located at 110 8th Street, in the City of Troy, County of Rensselaer, State of New York.

## IV.     FACTUAL BACKGROUND

12.     RPI describes its organizational mission as being to "educate[] the leaders of tomorrow for technologically based careers." *See* Rensselaer Polytechnic Institute 2017 IRS Form 990 at Part I (1) ("Form 990").

13.     In 1999, under the leadership of President Shirley Ann Jackson, RPI developed and adopted the "Rensselaer Plan" (the "Plan"), a foundational, university-wide, administrative policy devoted to increasing the university's standing and improving the educational experience offered to its students.

14.     Under the Plan, RPI developed and subsequently marketed to its prospective and current students a unique academic experience fundamentally centered around an in-person, on-campus academic experience and related on-campus services.

15.     The Plan, which was updated in 2013, contains, among other things, specific commitments by the university administration that it characterizes as "We Will Statements". Among the most prominent of these We Will Statements is the university's commitment to "[o]ffer a complete student experience, highlighted by:  Clustered Learning, Advocacy, and Support for Students (CLASS)."  A copy of the Plan, as revised in 2013, is annexed hereto as Exhibit "A."

16. A fundamental tenet of the CLASS program as set forth in the Plan is the importance of the on-campus experience and related on-campus services to the educational experience at RPI which is embodied in its emphasis on "Clustered Learning." Exh. "A", at p. 4.

17. At all relevant times, RPI marketed its CLASS program to current and prospective students as "a bold, comprehensive, and holistic residential college model that provides unparalleled developmental education and support in every sphere of student life—from our revitalized residential settings to our leading-edge classrooms and laboratories." *Id.* at p. 10.

18. In describing the value of the CLASS program to students, RPI advised prospective students on its website and in other forums that "CLASS provides a programmatic framework for strengthened counseling, unique co-op experiences, academic skills building, cultural exposure, leadership opportunities, community building, and global engagement" and notes that "Many of these activities originate within the residential setting." *Id.* The university further described the CLASS program as one of its "unique strengths" that differentiates it as an institution of higher learning. *Id.* at p. 11.

19. RPI promoted the value provided by its on-campus experience and related on-campus services to prospective students throughout the Plan and elsewhere in its marketing materials to current and prospective students. For example, on its website, it promised that "[w]ith over 475 residential programs annually, students will have the opportunity to socialize with hall residents and the campus community while increasing their knowledge of Multicultural Sophistication, Intellectual Agility, and a Global View." *Student Living and Learning*, Rensselaer Polytechnic Institute Website, (last accessed May 3, 2020), https://sll.rpi.edu/residential-commons/living-learning.

20.	On its website, RPI further marketed the value of the CLASS program to prospective and current students in an informational video that featured students engaged in a wide-range of on-campus events including working in laboratories, using the athletic facilities, and socializing in student common areas, and featured students and faculty attesting to the transformative impact of the on-campus residential academic experience. *See CLASS (Clustered Learning, Advocacy, and Support for Students)*, Rensselaer Polytechnic Institute Website, (last accessed May 3, 2020), https://info.rpi.edu/class.

21.	RPI promoted the importance of the on-campus residential academic experience to its CLASS program, which it described as "Residential Clustering," on its website, stating:

### RESIDENTIAL CLUSTERING

To ensure that the educational and developmental needs of our students are met, Rensselaer provides unique living and learning communities for each class cohort. As a central feature of CLASS, the following commons communities exist, each with its own character and focus, creating a small, tightly knit student community that blends the academic, social, and residential aspects of university life.

**Three Unique Commons at Rensselaer:**

**Residential Commons** - On-campus residence halls, clustered by class cohort, provide students with ongoing support and guidance.

**Greek Commons** - A living and learning environment that cultivates leadership and personal development for Greek chapter and council members through programming and collaboration with staff and campus leaders.

**Off-Campus Commons (1525 15th St.)** - A place for students living off campus to engage and collaborate with the Rensselaer campus community through programs, meetings, and events.

Several affinity-based living options are also available, including "Vasudha," centered around earth, energy, and the environment; "Leadership House," which provides student leadership development; "Design and the Arts," for students interested in the intersection of design, arts, media, and technology; "Wellness House," focused on a holistic approach to health and well-being; and, beginning fall '19, "Cultural House," celebrating the diversity of our student community; and the "Global Experience House," offering international views and experiences.

*Id.*

22. In the Plan and as part of the CLASS program, RPI also promised that "we will . . . [p]rovide for our students an inclusive community, within a residential college model, that supports them in their personal growth and success." Exh. "A", at p. 20.

23. RPI further acknowledged the crucial importance of on-campus residential and recreational facilities to the student experience in the Plan, noting that "[r]esidential and recreational facilities for our students must be inviting and support a robust living/learning environment." *Id.* at p. 23.

24. In fact, RPI deemed the on-campus, residential experience to be so critical to the overall student experience and its academic product that it mandated that all first and second year students, transfer students, and rising undergraduate juniors participating in the mandatory "The Arch" summer semester live on campus and pay fees for room and board.

25. In justifying this on-campus residential mandate, RPI stated on its website that "[l]iving on campus is a critical component of the CLASS (Clustered Learning, Advocacy, and Support for Students) experience. It provides students with the opportunity to live, learn, and experience Rensselaer and the local Troy area with members of their cohort." *Student Living and Learning, Housing Requirement*, Rensselaer Polytechnic Institute Website, (last accessed May 3, 2020), https://sll.rpi.edu/residential-commons/housing-requirement.

26. The Arch requirement for rising undergraduate juniors was promoted by RPI in the Plan and elsewhere as another crucial and fundamental component of its academic product.

27. RPI describes The Arch requirement on its website as follows:

> "During The Arch, students remain on campus for the summer after their sophomore year, taking junior-level classes, and receive focused attention from professors at this pivotal point in their academic progression. Then, students leave the Troy campus for a semester during the traditional junior year—either fall or spring— to pursue their passions in the form of co-ops, internships, civic

>   engagement, research, or international experiences. Students who
>   pursue these opportunities during their academic career are better
>   prepared for future professional careers and graduate school."

*The Arch, What is the Arch?*, Rensselaer Polytechnic Institute Website, (last accessed May 3, 2020), https://info.rpi.edu/arch/what-arch.

28. In essence, The Arch is a mandatory summer semester for rising undergraduate juniors that takes the place of a traditional semester during their junior year. After completing The Arch requirement, students then take part in a "Semester Away" during their junior year in which they are encouraged to seek out internships and other forms of experiential learning away from the RPI campus.

29. Students are charged tuition and fees for their Arch Semester in the same manner as for other semesters.

30. Indisputably, the Plan has achieved transformational results for RPI, and the commitments made by the university to provide an experiential on-campus learning environment have attracted increases in enrollment and revenue to the university.

31. In this regard, in its most recently available tax return for the year ending June 2018, RPI reported annual revenue of $591,700,082 and total assets worth over $1.5 billion. *See* Form 990, at Part 1(12), (20).

32. Upon information and belief, the success of the Plan and its importance to the university is also reflected in the compensation paid to the school's executive president, Dr. Shirley Ann Jackson, who is reported to be the third highest paid college official in the nation with total compensation of over $5,000,000 annually. *See* Bauman et al., *Executive Compensation at Public and Private Colleges*, THE CHRONICLE OF HIGHER EDUCATION, Jan. 14, 2020, https://www.chronicle.com/interactives/executive-compensation#id=table_private_2017

33. In or about February 2020, a contagious virus designated "COVID-19" was observed by state and federal authorities to have spread to the United States and the State of New York.

34. On or about March 10, 2020, RPI became one of the first colleges in New York's Capital District to announce that it was cancelling all in-person instruction and would be conducting all instruction remotely in light of the ongoing COVID-19 pandemic.

35. Thereafter, RPI announced that it would be taking immediate action to bring virtually all on-campus activity to a halt, including:

   a. Directing Plaintiffs and all other students living on campus to vacate their on-campus housing no later than March 20, 2020;

   b. Prohibiting Plaintiffs and all other students from accessing any on-campus facilities or buildings (but for a limited number of students granted special permission to remain on campus);

   c. Cancelling all in-person student activities, special events, travel, and extracurricular activities; and

   d. Cancelling the scheduled commencement ceremony and replacing it with a "remote" commencement ceremony.

36. Upon information and belief, the fair market value of online academic instruction is substantially less than the fair market value of the on-campus academic experience and related on-campus services that were promised by Defendant to its students.

37. Nevertheless, RPI thereafter announced to its students that "Rensselaer will not be adjusting tuition for the spring semester 2020.  Class are continuing through remote instruction." *Frequently Asked Questions*, *Division of Student Life, Office of the Vice President*, Rensselaer

Polytechnic Institute Webpage, (last accessed May 3, 2020), https://rpi.app.box.com/v/covid19-faq-students

38. RPI also subsequently announced that the above-mentioned restrictions would apply not only to the Spring 2020 semester, but to the upcoming Summer 2020 Arch semester as well.

39. RPI conceded on its website that "one intent of The Arch program is for students to live and learn on campus together" and that "[w]e realize that we cannot completely replace the community-building elements in an online environment." *Frequently Asked Questions*, *Division of Student Life, Office of the Vice President*, Rensselaer Polytechnic Institute Webpage, (last accessed May 3, 2020), https://rpi.app.box.com/v/covid19-faq-students

40. On or about April 3, 2020, RPI began providing instruction to its students solely via remote means such as prerecorded videos, telephone, and videoconference.

41. As a result of the restrictions put in place by Defendant, students who were charged tuition for the Spring and/or Summer 2020 Arch semesters have and will be deprived of an on-campus academic experience and related on-campus services that were promised to them by Defendant, including, but not limited to:

    a. The ability to engage in in-person, residential, experiential, kinesthetic, and hands-on learning;

    b. The ability to access on-campus facilities such as laboratories, workshops, and athletic facilities;

    c. The ability to participate in on-campus extracurricular activities;

    d. The ability to participate in on-campus events and lectures;

9

  e. The ability to engage in in-person interaction with other students, faculty, and staff; and

  f. The ability to participate in "Clustered Learning", which Defendant advertised as a critically important and distinguishing factor justifying attendance at its institute.

42. Despite its inability to deliver the on-campus academic experience and related on-campus services it promised to students, RPI has failed and refused to refund or adjust any portion of the tuition paid by Plaintiffs or, upon information and belief, any of its students for the Spring 2020 or Summer 2020 Arch semesters.

43. Additionally, RPI has further failed to refund or adjust fees charged to Plaintiffs or, upon information and belief, any of its students, for the Spring 2020 and Summer 2020 Arch semesters in an amount that equitably compensates students for their reduced ability to utilize the services for which those fees were charged, including, but not limited to student activity fees, health center fees, and fees for individual clubs and activities.

44. In addition, RPI has refused to reduce or adjust the tuition and fees charged for the Summer 2020 Arch semester notwithstanding its inability to provide the promised on-campus academic experience and related on-campus services.

45. RPI's failure to reduce or refund the tuition and fees charged for the Spring 2020 and Summer 2020 Arch semesters has resulted in Plaintiffs and other similarly situated students being charged inequitable and excessive tuition and fees.

46. In effect, RPI has sought to reduce the financial burden it faces as a result of the COVID-19 epidemic by inequitably shifting that burden onto its students.

47. Upon information and belief, RPI has engaged in these acts and omissions at the expense of its students despite having accepted millions of dollars in federal aid under the

Coronavirus Aid, Relief, and Economic Security (CARES) Act intended to replace revenue lost as a result of the COVID-19 pandemic.

## V. CLASS ALLEGATIONS

48. Plaintiffs repeat and reassert each of the preceding paragraphs as though fully set forth in this paragraph.

49. Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23 (a), (b)(2) and (b)(3) on behalf of the class, which is comprised of the subclasses defined below:

   a. **Spring 2020 Semester**

   All students enrolled in the 2020 Spring semester at Rensselaer Polytechnic Institute who were charged tuition or fees for services and benefits that were not fully accessible or delivered; and

   b. **Summer 2020 Arch Semester**

   All students enrolled in the 2020 Summer Arch semester at Rensselaer Polytechnic Institute who were charged tuition or fees for services and benefits that were not fully accessible or delivered.

50. Upon information and belief, the scope of the class may be further refined after discovery of Defendant's and/or third-party records.

51. The exact number of members of the class, as identified above, is not known to plaintiffs, but upon information and belief, exceeds 7,000 persons and is sufficiently numerous such that joinder of individual members herein is impracticable.

52. The members of the putative class are mutually and commonly aggrieved and the relief sought is common to the entire class and, if granted, would commonly benefit the entire class.

53. There are numerous questions of law and fact common to plaintiffs and the class, including:

    a. Whether Plaintiffs paid tuition to Defendant for the Spring 2020 and/or Summer 2020 Arch semesters.

    b. Whether Plaintiffs paid fees to Defendant for the Spring 2020 and/or Summer 2020 Arch semesters.

    c. Whether Defendant was unjustly enriched by Plaintiffs' payment of tuition for the Spring 2020 and Summer 2020 Arch semesters.

    d. Whether Defendant was unjustly enriched by Plaintiffs' payment of fees for the Spring 2020 and Summer 2020 Arch semesters.

    e. Whether it would be against equity and good conscience to permit Defendant to retain the full unrefunded amount of tuition paid by Plaintiffs for the Spring 2020 and Summer 2020 Arch semesters.

    f. Whether it would be against equity and good conscience to permit Defendant to retain the full unrefunded amount of fees paid by Plaintiffs for the Spring 2020 and Summer 2020 Arch semesters.

    g. Whether a legal contract was formed between Plaintiffs and Defendant.

    h. Whether Defendant failed to perform its obligations to Plaintiffs under the contract.

54. Common questions of fact and law predominate over any questions affecting only individual members of the class, including but not limited to the alleged acts and omissions and breach of Defendant's legal duties set forth herein.

55. Plaintiffs' claims herein are typical of the claims of the class, in that the claims of all members of the class, including Plaintiffs, depend on a showing of the acts and omissions of Defendant giving rise to the right of Plaintiffs to the relief sought.

56. Plaintiffs will fairly and adequately protect the interests of the respective class members in that plaintiffs have such a plain, direct, and adequate interest in the outcome of the controversy to assure the adequacy of the presentation of the issues involved herein. Plaintiffs have no interest which is adverse to any interest of the class members.

57. Plaintiffs have retained competent counsel with substantial experience litigating class claims in both state and federal court.

58. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to the class.

59. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

60. Absent class certification, individual litigation of the claims would be unreasonably expensive in light of the probable recoverable damages, burdensome upon the court, and would waste resources otherwise available to compensate the class.

61. Absent class certification, the claims of infant class members may never be timely.

**VI.  CAUSES OF ACTION**

### FIRST CAUSE OF ACTION
### (Breach of Contract)

62. Plaintiffs repeat and reassert each of the preceding paragraphs as though fully set forth in this paragraph.

63. Defendant Rensselaer Polytechnic Institute extended an offer to provide Plaintiffs with an on-campus academic experience and related on-campus services during the Spring 2020 and/or Summer 2020 Arch semesters in consideration for the payment of certain tuition and fees.

64. Plaintiffs accepted Defendant's offer and tendered the agreed upon consideration to Defendant which Defendant accepted.

65. Defendant thereafter failed to provide the agreed upon on-campus academic experience and related on-campus services in breach of the parties' contract and in violation of the parties' agreement.

66. Defendant failed to act fairly and in good faith in its contractual dealings with Plaintiffs.

67. Plaintiffs have been damaged by Defendant's breach of contract by, among other things, being deprived of the full value of the bargained for on-campus academic experience and related on-campus services and by the future diminution of the value of their academic degree and earnings.

68. Plaintiffs are entitled to recover damages as a result of Defendant's breach, including, but not limited to, reimbursement of tuition, fees and other expenses, in an amount to be determined upon the trial of this action.

## SECOND CAUSE OF ACTION
### (Estoppel)

69. Plaintiffs repeat and reassert each of the preceding paragraphs as though fully set forth in this paragraph.

70. At all times relevant, defendant Rensselaer Polytechnic Institute made a clear and unambiguous promise to provide students, including Plaintiffs, with an on-campus academic experience and related on-campus services.

71. The promises made by Defendant are incorporated into the Plan, which characterizes the commitments by Defendant as "We Will Statements." Exh. "A", at p. 5.

72. Plaintiff incorporates by reference herein each of Defendant's statements made in the Plan.

73. Among the most prominent of the We Will Statements is Defendant's commitment to "[o]ffer a complete student experience, highlighted by: Clustered Learning, Advocacy, and Support for Student (CLASS)." Exh. "A", at p.10.

74. It was reasonable and foreseeable that students would rely on Defendant's promise to provide students with an on-campus academic experience and related on-campus services.

75. Plaintiffs reasonably relied on Defendant's promise to their detriment, in among other things, being deprived of an on-campus academic experience and related on-campus services.

76. Defendant should be equitably estopped from retaining the full amount of the tuition and fees paid to Defendant by Plaintiffs for an on-campus experience and related on-campus services.

77. Accordingly, Plaintiffs are entitled to recover damages in an amount to be determined upon the trial of this action, including, but not limited to, reimbursement of tuition, fees and other expenses, and such other and further relief as this Court deems just and equitable.

### THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

78. Plaintiffs repeat and reassert each of the preceding paragraphs as though fully set forth in this paragraph.

79. Plaintiffs paid tuition and fees to defendant Rensselaer Polytechnic Institute for an on-campus academic experience and for related on-campus services during the Spring and/or Summer 2020 Arch semesters.

80.     Plaintiffs' payment of such sums conferred a direct benefit upon Defendant and Defendant accepted such benefit.

81.     Defendant's acceptance of such benefit was at the expense of Plaintiffs who were deprived of the further beneficial use of such funds.

82.     Defendant has failed to provide plaintiffs with an on-campus academic experience for the Spring or Summer 2020 Arch semesters or to provide the related on-campus services.

83.     It would be against equity and good conscience to permit Defendant to retain the full amount of the tuition and fees paid to it by Plaintiffs for an on-campus experience and related on-campus services which Defendant has failed and refused to provide.

84.     As a result of Defendant's acceptance of tuition and fees paid by Plaintiffs, Defendant has been unjustly enriched and Plaintiffs are entitled to the disgorgement of such sums in an amount to be determined upon the trial of this action and such other and further relief as this Court deems just and equitable.

85.     In the alternative to the claims alleged above, Plaintiffs have no other adequate remedy at law.

**VII.   DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a jury trial on all issues so triable.

**VIII.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against defendant as follows:

  A.    Certifying this action as a class action;

  B.    Appointing the named Plaintiffs as class representatives;

  C.    Appointing the undersigned counsel as class counsel;

D. Awarding compensatory and special damages, together with pre and post judgment interest, in an amount to be determined at trial;

E. Granting declaratory relief adjudicating the parties' legal rights and obligations;

F. Granting injunctive relief directing defendant to return all payments made by Plaintiffs to Defendant for tuition and fees for the Spring 2020 semester and Summer 2020 Arch semester or, in the alternative, the amount of such payments as would prevent Defendant from being unjustly enriched;

G. Granting such other and further equitable relief as justice requires;

H. For the costs, disbursement, and reasonable attorneys' fees of this action; and

I. For such other and further relief as this Court deems just and proper.

**DREYER BOYAJIAN LLP**
s/Donald W. Boyajian (101196)
s/James R. Peluso (105634)
s/Joshua R. Friedman (520628)
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
dboyajian@dblawny.com
jpeluso@dblawny.com
jfriedman@dblawny.com
*Counsel for Plaintiffs and Proposed Class*