UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ETHAN DEECHER AND GRADY HABICHT,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. |
| v. | 1:20-cv-00498-DNH-CFH |
| RENSSELAER POLYTECHNIC INSTITUTE, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendant
Office and P.O. Address
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000

3572712.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

    STANDARDS FOR A MOTION UNDER RULE 12(c) ........................................................ 6

POINT I .................................................................................................................................... 8

    PLAINTIFFS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED ........................ 8

POINT II ................................................................................................................................. 16

    PLAINTIFFS' ESTOPPEL CLAIM MUST BE DISMISSED ............................................. 16

POINT III ............................................................................................................................... 18

    PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED ......................... 18

CONCLUSION ....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

André v. Pace Univ.,
    170 Misc. 2d 893 (2d Dept. 1996) ...................................................................15, 16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).......................................................................................7

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007).......................................................................................7

Bianco v. Bianco,
    36 A.D.3d 490 (1st Dept. 2007)...................................................................11

Carr v. St. John's Univ.,
    17 A.D.2d 632 (2d Dept. 1962) .....................................................................9

Cheves v. Trustees of Columbia Univ.,
    89 A.D.3d 463 (1st Dept. 2011)......................................................12, 13, 18

DiFolco v. MSNBC Cable LLC,
    622 F.3d 104 (2d Cir. 2010)..........................................................................7

Erickson v. Pardus,
    551 U.S. 89 (2007).........................................................................................7

Faiaz v. Colgate Univ.,
    64 F. Supp. 3d 336 (N.D.N.Y. 2014).......................................................11, 12, 18

Gally v. Columbia Univ.,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)..............................................11, 12, 14, 15, 18

Habitzreuther v. Cornell Univ.,
    5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015).......................8, 15

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995)..............................................................................7

Jeffers v. American Univ. of Antigua,
    125 A.D.3d 440 (1st Dept. 2015)..............................................................18, 19

Jones v. Trustees of Union Coll.,
    92 A.D.3d 997 (3d Dept. 2012) ...................................................................11

Kaye v. Grossman,
    202 F.3d 611 (2d Cir. 2000)..........................................................................18

3572712.1

Keefe v. New York Law Sch.,
    71 A.D.3d 569 (1st Dept. 2010)..........................................................................10

Knelman v. Middlebury Coll.,
    898 F. Supp. 2d 697 (D. Vt. 2012)......................................................................12

Lloyd v. Alpha Phi Alpha Frat.,
    96-cv-348, 1999 U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999)............................10

Maas v. Cornell University,
    94 N.Y.2d 87 (1999) ..........................................................................................10

Maggette v. Dalsheim,
    709 F.2d 800 (2d Cir. 1983)..................................................................................6

Olsson v. Bd. of Higher Educ.,
    49 N.Y.2d 408 (1980) ........................................................................................14

Paladino v. Adelphi Univ.,
    89 A.D.2d 85 (2d Dept. 1982) ............................................................................15

Papelino v. Albany Coll. of Pharm.,
    633 F.3d 81 (2d Cir. 2011)............................................................................10, 14

Paynter v. New York Univ.,
    66 Misc. 2d 92 (1st Dept. 1971) ....................................................................13, 14

Prasad v. Cornell Univ.,
    5:15-cv-322, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016)............11, 17

Roberts v. Babkiewicz,
    582 F.3d 418 (2d Cir. 2009)..................................................................................7

Rolph v. Hobart & William Smith Colls.,
    271 F. Supp. 3d 386 (W.D.N.Y. 2017) ......................................................12, 17, 18

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000)....................................................................................7

Tedeschi v. Wagner Coll.,
    49 N.Y.2d 652 (1980) ......................................................................................9, 10

3572712.1

## PRELIMINARY STATEMENT

Defendant Rensselaer Polytechnic Institute ("Rensselaer") submits this memorandum of law in support of a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure to dismiss this purported class action.

Plaintiffs, two Rensselaer students, purport to represent a class of Rensselaer students and seek to recover damages for breach of contract because, in light of the global COVID-19 pandemic, and as required by mandatory state closure orders, Rensselaer transitioned to remote instruction in the middle of this year's Spring Term.

Both Plaintiffs continued in their chosen course of instruction for the Spring Term, received the benefit of instruction from the same Rensselaer faculty who were teaching their courses before the state-mandated shutdown of on-campus instruction, and were awarded credits for those courses toward a Rensselaer degree.

Plaintiffs also enrolled in Rensselaer's Summer Semester, known as the Arch Semester, well after Rensselaer transitioned to remote instruction, and with the knowledge that the Arch Semester program would be provided remotely, and without discounted tuition. Both plaintiffs enrolled for the Arch Semester after being advised by Rensselaer that they had the option not to do so, yet they still seek damages for breach of contract for the Arch Semester.

Rensselaer publishes student handbooks and catalogs. Plaintiffs have not alleged any enforceable promise in those documents that Rensselaer will provide in person, on-campus instruction, even in the face of a global pandemic and a state-ordered shutdown of the Rensselaer campus. Instead, Plaintiffs seek to form a new contract based on generalized statements about the Rensselaer on-campus experience contained in Rensselaer's strategic plan.

3572712.1

Plaintiffs' action must be dismissed because they have received what they bargained for when they enrolled at Rensselaer -- instruction in their chosen courses by Rensselaer faculty and, upon completion of their course work, credit toward a Rensselaer degree.  They do not seek to enforce any specific promise Rensselaer made to them; instead, they ask that this Court create a new contract and enforce it on behalf of all Rensselaer students.  Inherent in this request is that the Court will review the instruction that was provided following the shutdown, evaluate the "worth" of that instruction as compared to on-campus instruction, and arrive at a "contractual" price for that instruction and award of credit toward a Rensselaer degree.

New York courts have steadfastly refused to enter the realm of academic decision making. They have refused to substitute their judgment for that of the academic officials who govern the state's higher education institutions.  While many decisions have identified that the relationship between a student and a college or university is contractual, the New York Court of Appeals has cautioned that in analyzing the relationship between a student and a college, "contract theory is not wholly satisfactory."  Accordingly, courts in New York will only enforce "specific promises set forth in a school's bulletins, circulars and handbooks."  Here, there is no such specific promise identified in the complaint, and the Court should, therefore, dismiss the complaint.

**BACKGROUND**

Plaintiffs Ethan Deecher and Grady Habicht commenced this action by filing a Complaint on May 4, 2020. Docket No. 1. On July 21, 2020, Rensselaer filed an Answer to the Complaint. Docket No. 12.

Rensselaer is a private university with its main campus in Troy, New York, and provides education to train leaders for technologically based careers. Complaint, ¶¶ 11-12. Plaintiffs Mr. Deecher and Mr. Habicht were both enrolled at Rensselaer as undergraduate engineering students during the Spring 2020 Semester. Complaint, ¶¶ 7-10.

Rensselaer publishes an Academic Calendar. Answer, ¶ 34, Exhibit E. Classes for the 2020 Spring Term began on January 13, 2020. Rensselaer's Spring Break began on March 9, 2020. On March 10, 2020, Rensselaer announced that because of concerns caused by the spread of the novel coronavirus, beginning on March 16, 2020, Rensselaer would be conducting instruction remotely. Complaint, ¶ 34, Answer, Exhibit C. The following day, March 11, 2020, Rensselaer announced that it was extending Spring Break by one week through March 23, 2020, and that online instruction would then begin and last through the balance of the Spring Term. Answer, Exhibit D.

Rensselaer's announcement coincided with government actions. On March 13, 2020, the President of the United States declared a National Emergency in connection with the pandemic. Answer, ¶ 33, Exhibit B. On March 20, 2020, New York Governor Andrew Cuomo issued Executive Order 202.6, mandating a statewide shutdown of non-essential businesses. Answer, ¶ 33, Exhibit A. Guidance issued by New York State made it clear that Executive Order 202.6 allowed private institutions to provide "remote instruction or streaming of classes… provided,

however, that no in person congregate classes are permitted." New York Department of Economic Development, <u>Guidance for Determining Whether a Business is Subject to a Workforce Reduction Under Recent Executive Orders</u>, last updated June 29, 2020.

Under the provisions set forth in Rensselaer's Catalog, students had the option of withdrawing from their Spring Term classes, and receiving a partial tuition refund, through March 14, 2020, after Rensselaer's March 10 announcement that all instruction for the balance of the Spring Term would be remote. <u>Answer</u>, ¶ 63, <u>Exhibit J</u>. Neither Plaintiff chose to do so.

On April 7, 2020, Rensselaer announced that it would be providing pro-rata room and board credits, net of Rensselaer-provided financial aid. That credit was posted to students' accounts on April 22, 2020. <u>Answer</u>, <u>Exhibit H</u>.

Mr. Deecher registered for five courses for the Spring Term. Mr. Habicht registered for four courses for the Spring Term. Both students continued in their scheduled courses through the balance of the Spring Term, and were awarded credits toward a Rensselaer degree. <u>Answer</u>, ¶ 88, <u>Exhibits L and M</u>. Neither Plaintiff alleges he resided in Rensselaer's on-campus housing during the Spring Term.

On April 7, 2020, Rensselaer's Vice Provost announced that because of the continued COVID-19 pandemic, the Arch Summer Semester would be provided remotely. The Plaintiffs were both advised by letter dated May 6, 2020, that they could take a leave of absence for the Arch Summer Semester, and that if they did so they would not be charged any tuition or fees for the program. <u>Answer</u>, ¶ 44, <u>Exhibit I</u>. All Rensselaer students were likewise advised that they could take a leave of absence for the Arch Summer Semester in the Questions and Answers referenced in Paragraph 37 of the Complaint. <u>Complaint</u>, ¶ 37; <u>Answer</u>, <u>Exhibit H</u>. Both Plaintiffs nevertheless chose to attend the Arch Summer Semester remotely.

3572712.1

Rensselaer publishes a Handbook of Student Rights & Responsibilities (the "Student Handbook").  It also publishes a Catalog specifying its academic programs, which includes information about tuition and fees.  <u>Answer</u>, ¶ 63, <u>Exhibits J and K</u>.  The Catalog contains the following provision:

> **Notice Regarding Changes** All information in this catalog pertains to the 2019-2020 academic year and is correct to the extent that the information was available on the catalog preparation date. However, Rensselaer reserves the right to change the course offerings, tuition, fees, rules governing admission, requirements for graduation and the granting of degrees, and any other regulations affecting its students. Such changes are to take effect whenever the administration deems necessary whether or not there is actual notice to individual students.

The Student Handbook likewise contains the following notice regarding changes:

> <u>Notice regarding changes</u>: Review of this Handbook will commence at least annually. Rensselaer reserves the right to change any regulation or policy affecting its students, including those set forth in this Handbook, as well as any tuition and fees, room and board costs, academic standards and requirements, or any rules governing admission, occupancy of residence halls, or the granting of degrees at any time. Changes to this Handbook will be communicated to the Rensselaer community. Such communication will include access to the updated Handbook.

Neither the Catalog nor the Student Handbook contains any promise that instruction will always be in-person and on-campus, much less a statement that such on-campus instruction will take place in the midst of a global pandemic and in violation of state closure mandates.

Plaintiffs' Complaint does not challenge the necessity of Rensselaer's actions and does not dispute that Rensselaer's transition to remote instruction was required by the State of New York and to protect the health of Rensselaer's students, faculty and staff.  Nor does the complaint allege that Plaintiffs did not receive instruction through the end of the Spring Semester. To the contrary, the complaint alleges that Rensselaer began remote instruction on April 3, 2020.  <u>Complaint</u>, ¶ 40. Further, Plaintiffs do not allege that they sought to withdraw from Rensselaer after the March 10,

2020, announcement that the school would move to remote instruction.  To the contrary, they continued in their courses and earned credits toward their degrees.  <u>Answer</u>, ¶ 88.  Instead of alleging that their instruction did not continue, they allege only that they were "deprived of an on-campus academic experience." <u>Complaint</u>, ¶ 41.  Plaintiffs do not contest that continuing with on campus instruction was rendered impossible by the global pandemic and government orders; rather, they simply allege that Rensselaer is contractually obligated to adjust their tuition and fees to compensate them for the loss of the on-campus experience for a portion of the semester. <u>Complaint</u>, ¶¶ 42-43.

Plaintiffs' Complaint was filed on May 6, 2020, and contains allegations about both the Spring 2020 Semester and the Arch Summer Semester.  <u>Complaint</u>, ¶ 38.  The Complaint contains causes of action for breach of contract (<u>Complaint</u>, ¶¶ 62-68), estoppel (<u>Complaint</u>, ¶¶ 69-77) and unjust enrichment (<u>Complaint</u>, ¶¶ 78-85).  Plaintiffs purport to represent a class of individuals, and propose two subclasses, a Spring 2020 Semester subclass, and a Summer 2020 Arch Semester subclass.  <u>Complaint</u>, ¶ 49.  Rensselaer has answered the Complaint and now seeks dismissal under Rule 12 (c).[1]

## ARGUMENT

### STANDARDS FOR A MOTION UNDER RULE 12(c)

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  <u>Maggette v. Dalsheim</u>, 709 F.2d 800, 801 (2d Cir. 1983). The motion for

---

[1] This action is one of two putative class actions that have been filed against Rensselaer seeking a refund of tuition and fees.  The other action is <u>Ford v. Rensselaer Polytech Institute</u> (DNH-CFH).  Plaintiffs in this action have filed a motion to consolidate the two actions.  Docket No. 1:20-cv-470.

judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6).  Id.

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  A plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp., 550 U.S. at 555.  When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir. 1995).

In deciding a motion to dismiss under Rule 12(c), the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice.  Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). The court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the pleadings as exhibits.  DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010); Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); Int'l Audiotext Network, Inc., 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

3572712.1

## POINT I

### PLAINTIFFS' BREACH OF CONTRACT CLAIM MUST BE DISMISSED

Plaintiffs allege that they entered into a contract with Rensselaer for an "on-campus academic experience" and that Rensselaer breached the alleged contract when it moved to online instruction in light of the COVID-19 pandemic and New York State's mandatory closure orders. Complaint, ¶¶ 63-65. Plaintiffs seek recovery of the tuition and fees they have paid to Rensselaer for the Spring 2020 and Summer 2020 semesters. Complaint, ¶ 68.

Plaintiffs, of course, do not allege any written contractual agreement in support of their claims. The implied contract claimed by Plaintiffs is contrary to well-established New York law governing the relationship between a student and a college or university. Although numerous decisions state that the basis of the legal relationship between a college and its student is contractual, the New York Court of Appeals has uniformly stated that contractual claims by students against a college are extremely limited.

A breach of contract claim by a student against a university must allege breach of a specific promise by the university. See, e.g., Habitzreuther v. Cornell Univ., 5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209, at *10-11 (N.D.N.Y. Aug. 25, 2015). Plaintiffs' contractual claims fail here for two independent reasons: First, Plaintiffs cannot identify any specific promise of on-campus instruction (even in the face of a pandemic and a state-mandated shutdown of the campus) in Rensselaer's Student Handbook or Catalog. Second, inherent in Plaintiffs' allegations is that this Court will be required to conduct an evaluation of Rensselaer's remote instruction during the second half of the Spring 2020 Semester, arrive at a judgment of its value, and order a reimbursement of tuition based on this evaluation.[2] Rensselaer's administration concluded that

---

[2] The highly subjective determination of the "value" of in-person instruction would vary significantly by individual student, making Plaintiffs' efforts to represent a class of students dubious. Students at Rensselaer have different

instruction could and should continue through the Spring 2020 Semester and that the completion of such instruction would be sufficient to earn credits toward a Rensselaer degree.  Under New York law, it is not for this Court to evaluate the academic programming offered by Rensselaer in the face of the pandemic and determine its worth.

The New York Court of Appeals has recognized  that "[w]hen a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought."  Carr v. St. John's Univ., 17 A.D.2d 632, 633 (2d Dept. 1962), aff'd on opinion below, 12 N.Y.2d 802 (1962). The Court of Appeals provided further illumination of the relationship between a college and its students in Tedeschi v. Wagner Coll., 49 N.Y.2d 652 (1980). In Tedeschi, the Court of Appeals reinstated a student who had been dismissed from Wagner College without a hearing, holding that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed."  49 N.Y.2d at 660.  Wagner College had published such a hearing requirement in a document it published entitled "1976-1977 Guidelines of Wagner College."  49 N.Y.2d at 657.  The Court of Appeals noted, however, that "contract theory is not wholly satisfactory" in defining the relationship between a student and a university:

> Contract theory is not wholly satisfactory, however, because the essentially fictional nature of the contract results in its generally being assumed rather than proved, because of the difficulty of its application, and because it forecloses inquiry into, and a balancing of, the countervailing interests of the student on the one hand and the institution on the other.

---

programs and experiences: many enroll in classes that are taught fully by lecture and do not involve any "hands-on" work.  Others may not engage in activities on campus that require physical presence. The "value" of this "face-to-face" experience will vary greatly depending on the student. The prospect of such a student-by-student evaluation demonstrates that class certification of the claims herein would be highly problematic.  It also demonstrates why New York courts have declined to entertain the type of "breach of contract" claims asserted by Plaintiffs here.

3572712.1

49 N.Y.2d at 658 (citation omitted).

The Court of Appeals reiterated the limited usefulness of contract theory in higher education cases in Maas v. Cornell University, 94 N.Y.2d 87 (1999).  The Court of Appeals noted that courts have only "a 'restricted role' in dealing with and reviewing controversies involving colleges and universities."  94 N.Y.2d at 92.  The Court of Appeals noted the limited scope of breach of contract claims by students:

> In the context of the relationship between a university and a student, this Court in *Tedeschi* held that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed."  We explicitly cautioned that the legal theory upon which this rule emerges is, however, not well defined, and that the "[c]ontract theory is not wholly satisfactory".  Further, we concluded that "[s]o much of the complaint as sought money damages and the right to a due process hearing based on claimed 'state action' was properly dismissed'.  Therefore, *Tedeschi* provides no support for Maas' claim under the alleged breach of contract theory.

94 N.Y.2d at 94-95 (internal citations omitted).

Courts have steadfastly followed the admonition of the New York Court of Appeals that the terms of a contract between a college and a student should not be assumed.  Accordingly, courts have limited contractual claims to enforcement of specific promises "'contained in the university's bulletins, circulars and regulations.'"  Papelino v. Albany Coll. of Pharm., 633 F.3d 81, 93 (2d Cir. 2011) (quoting Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 654 (2d Dept. 1987)); Keefe v. New York Law Sch., 71 A.D.3d 569, 570 (1st Dept. 2010) ("However, only specific promises set forth in a school's bulletin, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract.").

This Court dismissed an implied breach of contract claim against Cornell University when the student failed to allege specific promises.  Lloyd v. Alpha Phi Alpha Frat., 96-cv-348, 1999

U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999).  See also Gally v. Columbia Univ., 22 F. Supp. 2d

199, 207 (S.D.N.Y. 1998); Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014); Jones

v. Trustees of Union Coll., 92 A.D.3d 997, 999 (3d Dept. 2012).  In Gally, Faiaz and Jones, the

courts likewise granted dismissal of breach of contract claims where the student failed to "identify

the specific terms of the implied contract that he claims were violated by the College."  Jones, 92

A.D.3d at 999.  Similarly, in Prasad v. Cornell Univ., 5:15-cv-322, 2016 U.S. Dist. LEXIS 161297

(N.D.N.Y. Feb. 24, 2016), this Court dismissed a breach of contract claim against Cornell

University where the student plaintiff failed to allege a specific contractual promise that had been

breached by Cornell.  Prasad, 2016 U.S. Dist. LEXIS 161297, at *63.

    Here, in seeking a reimbursement of their "tuition," Plaintiffs are asking the Court to create

a new definition of "tuition," i.e., that it is a payment for the extrinsic benefits of an "on-campus

academic experience."   The dictionary definition of "tuition" is: "payment for instruction."

Webster's 3d New Int'l Dictionary (1993).   New York courts have applied this dictionary

definition when interpreting the meaning of "tuition."  Bianco v. Bianco, 36 A.D.3d 490, 491 (1st

Dept. 2007) (agreement to pay for "tuition" only applied to the charge for instruction).[3]

---

[3] In addition to tuition, Plaintiffs claim they are entitled to recover certain fees they paid as students of Rensselaer.
The fee claim fails for the same reason as the tuition claim: Plaintiffs do not allege a specific promise in the Student
Handbook or Catalog that Rensselaer breached with respect to the student fees.  Nor do Plaintiffs allege what services
related to those fees they claim to have not received after March 23, 2020.  There is no allegation in the Complaint
that Rensselaer did not continue to operate after the transition to remote instruction.  Paragraph 37 of Plaintiffs'
Complaint incorporates by reference the document entitled "Frequently Asked Questions For Students, Division of
Student Rights," a copy of which is attached to the Answer as Exhibit H.  This document demonstrates that during the
Spring Semester, the Student Health Center remained open, and the Counseling Center continued to conduct
appointments over the phone.  The Student Union building remained open on a limited schedule for students granted
permission to access the building.  Student Life activities continued to be offered virtually.  Answer, Exhibit H.  During
the Summer Arch Semester, Rensselaer did adjust certain fees.  The Student Activities fee was reduced by 50%, but
certain student activities continued virtually.  Answer, Exhibit H.  The Health Center fee was not adjusted because
health and wellness services were available throughout the summer, including medical, counseling, health promotion
and disability accommodation and advocacy services.  Answer, Exhibit H.

Here, Rensselaer met the terms of the implied contract with its students: it continued to provide Plaintiffs with instruction by Rensselaer faculty following the state-ordered shutdown of its campus, and Plaintiffs took advantage of that instruction and earned credits toward their Rensselaer degrees.  Plaintiffs cite no requirement in the Rensselaer Student Handbook or Catalog that instruction must be provided in a classroom setting.  Moreover, in both the Student Handbook and the Catalog, Rensselaer reserves the right to modify its educational program.  It is hard to imagine a more compelling reason to modify the educational program than to protect the health of Rensselaer students, faculty and staff during a global pandemic, and to comply with a state-mandated shutdown of the Rensselaer campus.[4]

Unable to find any specific promise to enforce in the Student Handbook or Catalog, Plaintiffs rely on clearly aspirational statements in Rensselaer's Strategic Plan.  Plaintiffs' attempt to convert Rensselaer's Strategic Plan into a contract between Rensselaer and its students is without merit.  Nothing in the Strategic Plan indicates it is intended to specify the course of instruction for students of Rensselaer.  The first words of the document demonstrate its purpose: "THE GOAL".  Complaint, Exhibit A, at 6.  The document is not a contract, it is a "Plan."  The courts have routinely refused to enforce aspirational goals in documents published by colleges and universities as part of an implied contract with the school's students.  See, e.g., Faiaz, 64 F. Supp. 3d at 360; Rolph v. Hobart & William Smith Colls., 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017); Knelman v. Middlebury Coll., 898 F. Supp. 2d 697, 709 (D. Vt. 2012); Gally, 22 F. Supp. 2d at 208; see also Cheves v. Trustees of Columbia Univ., 89 A.D.3d 463 (1st Dept. 2011).  In Cheves, the First Department affirmed dismissal of a breach of contract claim by an alumnus of Columbia

---

[4] Rensselaer's answer (Docket No. 12) asserts the defense of impossibility.  Plaintiffs cannot seriously contest that it was impossible to continue on-campus instruction in the face of the global pandemic and a government-ordered shutdown.  In any event dismissal is required because Plaintiffs have not plausibly plead a breach of a specific promise by Rensselaer with respect to instruction, which is what tuition is paid for.

who had been banned from the campus.  The First Department followed the oft-stated rule that "only specific promises set forth in a school's bulletins, circulars, and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." 89 A.D.3d at 464 (quoting Keefe, 71 A.D.3d at 570).  The First Department rejected the plaintiff's assertion that statements in an alumni brochure describing benefits available to alumni were the type of specific promises that could be enforced under an implied contract theory. Similarly, here, the statements in Rensselaer's Strategic Plan about the on-campus experience at Rensselaer are not legally enforceable promises that instruction will be delivered on-campus even in the face of a global pandemic and a state-ordered shutdown of the Rensselaer campus.

Rensselaer agrees that, in the absence of a global pandemic, the on-campus experience normally enjoyed by its students may have been preferable to the remote instruction provided since the forced closure of the campus.  However, the pandemic created a reality to which everyone had to adapt.  Rensselaer has met its contractual obligations to its students by adapting to the mandate for remote instruction, and provided Plaintiffs instruction with the same Rensselaer faculty who were providing instruction before March 23, 2020, and by awarding credits to the students who have completed the prescribed course of instruction.

A claim similar to Plaintiffs' was rejected in Paynter v. New York Univ., 66 Misc. 2d 92 (1st Dept. 1971).  In Paynter, NYU had suspended classes in May 1970 following campus unrest over United States troops entering Cambodia and the deaths of students at Kent State University. Of course, there was no technology to provide remote instruction in 1970, and classes just stopped. The lower court had ordered a tuition refund based on the cancellation of the final 19 days of classes at NYU.  The Appellate Term reversed, holding that "the services rendered by the university cannot be measured by the time spent in a classroom."  66 Misc. 2d at 92.  The Appellate

Term further noted that it was not for the courts to substitute their judgment for that of the school's administrators that classes could not continue.  Id. at 92-93.

Plaintiffs' breach of contract claims must also be dismissed because they run afoul of New York's steadfast refusal to recognize claims of "educational malpractice."   The courts have repeatedly stated that "a student may not seek to avoid this rule by couching such a claim as a breach of contract claim."  Papelino, 633 F.3d at 93.  See also Gally, 22 F. Supp. 2d at 206-07 ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" (quoting André v. Pace Univ., 170 Misc. 2d 893, 896 (2d Dept. 1996)).   Plaintiffs' supposed breach of contract claims should be recognized for what they are: they allege that the remote instruction provided by Rensselaer faculty did not provide as effective and valuable an education as did the on-campus instruction provided prior to the global pandemic.  Complaint, ¶¶ 36, 67.

Educational malpractice claims are not recognized in New York because they would require courts to substitute their judgment for that of the academic officials entrusted with administering the state's colleges and universities.  Accordingly, "claims that sound in tort and ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract."  Gally, 22 F. Supp. 2d at 207.  See also Olsson v. Bd. of Higher Educ., 49 N.Y.2d 408, 413 (1980) ("Because such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.").

Here, in the face of a global pandemic, and a state-mandated shutdown of its campus, Rensselaer's administrators exercised their judgment that effective instruction could continue remotely, and that Rensselaer would award credit to students who completed the work remotely. Plaintiffs ask this Court to evaluate the instruction Rensselaer faculty provided and make a different judgment than that made by Rensselaer's administration. This is the exact type of review that New York courts have declined to undertake. There is no way for this Court to evaluate the value of the education provided by Rensselaer other than by substituting its judgment for that of Rensselaer's administrators. In <u>Paladino v. Adelphi Univ.</u>, 89 A.D.2d 85 (2d Dept. 1982), the Second Department ordered the dismissal of breach of contract claims against a private elementary school, noting that the claims ran afoul of the refusal by New York courts to entertain claims of educational malpractice. The Second Department stated:

> Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction. It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution. There is nothing novel about a contract action that would permit for judicial intervention into the process of learning. For in effect, the claim still requires judicial displacement of complex educational determinations made by those charged with the responsibility to instruct the child….
>
> ****
>
> The courts should not become engaged in determining the propriety of the course instruction adopted by a private school….Simply put, the courts should refrain from becoming overseers of the learning process.

89 A.D.2d at 89-91. Although <u>Paladino</u> involved a private elementary school, it has been repeatedly cited in the higher education context, including by this Court. <u>See</u>, <u>e.g.</u>, <u>Habitzreuther</u>, 2015 U.S. Dist. LEXIS 112209, at *11; <u>Gally</u>, 22 F. Supp. 2d at 206; <u>André v. Pace Univ.</u>, 170

Misc. 2d 893 (2nd Dept. 1996).  In André, the Second Department reversed an award of damages entered by the court below, which had ordered a refund of tuition paid for a course at Pace University on a breach of contract theory.  The students alleged that the instruction provided in a course was at a higher level than what the school catalog described and the trial court awarded a refund of tuition after a trial.  The Second Department  reversed the lower court's judgment, holding that "the court below improperly engaged in judicial evaluation of a course of instruction that the courts of this State have consistently held is the proper domain of educators and educational institutions entrusted to the task."  170 Misc. 2d at 899.

Moreover, Plaintiffs chose to continue with the Spring Semester after the announcement of March 10, 2020.  Plaintiffs even enrolled in the Summer Arch Semester after being told they could defer that program – they enrolled for the summer voluntarily and with the full understanding that the summer term would be fully remote.  Plaintiffs have received instruction during these semesters and credit toward their degrees, and have not plausibly alleged any breach of contract by Rensselaer.  Accordingly, the breach of contract claim must be dismissed.

<u>**POINT II**</u>

**PLAINTIFFS' ESTOPPEL CLAIM MUST BE DISMISSED**

Plaintiffs' estoppel claim must also be dismissed.  The Complaint alleges that Rensselaer "made a clear and unambiguous promise to provide students, including Plaintiffs, with an on-campus experience."  <u>Complaint</u>, ¶ 70.  Just as in their flawed breach of contract claim, Plaintiffs rely on Rensselaer's Strategic Plan as setting forth this "clear and unambiguous promise." <u>Complaint</u>, ¶ 71.

The United States District Court for the Western District of New York recently set forth the elements of promissory estoppel in a case against a college:

3572712.1

> In New York, promissory estoppel has three elements:  a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance."  Cyberchron Corp. v. Calldata Sys. Dev., Inc., 47 F.3d 39, 44 (2d Cir. 1995) (internal quotation marks omitted).  "A plaintiff may utilize the doctrine of promissory estoppel in two situations: (1) to enforce a 'promise in the absence of bargained for consideration'; and (2) 'to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds.'"  Kant v. Columbia Univ., No. 08 Civ. 7476(PGG), 2010 U.S. Dist. LEXIS 21900, 2010 WL 807442, at *4 (S.D.N.Y  Mar. 9, 2010) (quoting Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 824 (2d Cir. 1940)).  "Where an enforceable contract exists, the doctrine pf promissory estoppel is inapplicable and a plaintiff cannot recover under this theory." Id.

Rolph v. Hobart & William Smith Colls., 271 F. Supp. 3d 386, 408 (W.D.N.Y. 2017)

In Rolph, the district court dismissed the student's promissory estoppel claim because his rights were governed by the implied contract between a student and his or her college, the terms of which were provided by the handbooks and bulletins of the school.  271 F. Supp. 3d at 408. The court dismissed the promissory estoppel claim because: "That Plaintiff has failed to sufficiently allege a breach of any contractual provision does not give rise to a promissory estoppel claim."  Id.

In Prasad v. Cornell Univ., 5:15-cv-322, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016), this Court dismissed an equitable estoppel claim by a student against Cornell University that was simply a restatement of his already dismissed breach of contract claim.  2016 U.S. Dist. LEXIS 161297, at *72-73.

As set forth in Point I above, Rensselaer met its obligations under the implied contract with its students by providing instruction and awarding credit.  Having failed to allege any breach of the contractual agreement between themselves and Rensselaer, Plaintiffs cannot recover damages under a promissory estoppel theory.   Further, the statements in the Strategic Plan are not even

close to the type of "clear and unambiguous promise" that would support an estoppel claim. Aspirational statements of "goals and objectives" are statements of "intention" and "cannot give rise to liability under a theory of promissory estoppel." Rolph, 271 F. Supp. 3d at 408. See also Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 360 (N.D.N.Y. 2014) (general statements of school policy cannot support breach of contract claim); Cheves v. Trustees of Columbia Univ., 89 A.D.3d 463 (1st Dept. 2011) (statement of benefits in alumni brochure cannot create implied contract); Gally v. Columbia Univ., 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1999) (aspirational statements in university's brochures cannot create a legally enforceable contract). Accordingly, the promissory estoppel claim must be dismissed.

## POINT III

### PLAINTIFFS' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Plaintiffs' final claim is for unjust enrichment. Plaintiffs allege that they paid tuition for an "on-campus academic experience," and that Rensselaer will be unjustly enriched if it retains Plaintiffs' tuition. A claim for unjust enrichment requires that a plaintiff "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).

Plaintiffs' unjust enrichment claim must be dismissed because it is nothing more than a restatement of their breach of contract claims. See, e.g., Jeffers v. American Univ. of Antigua, 125 A.D.3d 440, 443 (1st Dept. 2015) ("Plaintiffs' unjust enrichment claims are 'indistinguishable from [their] … claim[s] for breach of contract, and must be dismissed as duplicative of the contract claim[s]'" (citation omitted)). In Jeffers, nursing students commenced an action against their school after they were delayed in taking their licensing exam. They alleged that the school's bulletins, circulars and handbooks formed an implied contract that they would be eligible to sit for

3572712.1

the licensing exam upon graduation from the school.  The First Department dismissed the unjust enrichment claim as duplicative of the implied contract.  125 A.D.3d at 443.

Even if Plaintiffs' unjust enrichment claim were not barred by the existence of an implied contract, they have alleged no facts showing that "equity and good conscience" requires a refund of their tuition.  Rensselaer did not close its campus on a whim; rather it did so to protect the health of its students, faculty and staff during the pandemic, and as required by orders of New York State.  Moreover, Plaintiffs do not allege that Rensselaer faculty failed to provide them the instruction in their courses during the balance of the Spring Term.  Nor do they allege that Rensselaer did not pay its faculty members for providing that instruction.  Rensselaer did not pocket a pile of money when it was forced to close the campus.  It continued to pay its faculty members and incur the usual expenses of operating an educational institution, plus additional expenses to address the pandemic.  Rensselaer credited students who lived in on-campus residences the pro rata share of their room and board charges for the Spring 2020 Semester.  Plaintiffs chose to continue at Rensselaer after the announcement of the move to online instruction, and earned credits.  Nothing in equity or good conscience requires a tuition refund.  Accordingly, the unjust enrichment claim must be dismissed.

## CONCLUSION

The Court should grant judgment on the pleadings dismissing the Complaint.

3572712.1

Dated:  July 27, 2020                                BOND, SCHOENECK & KING, PLLC

                                                     By: _____
                                                            Jonathan B. Fellows, Esq.
                                                            Suzanne M. Messer, Esq.
                                                     One Lincoln Center
                                                     110 West Fayette Street
                                                     Syracuse, New York 13202
                                                     (315) 218-8000

3572712.1